# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| MARK CHRISTOPHER FLORES, | No. ED CV 18-271-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.
## PROCEEDINGS

Plaintiff filed this action on February 5, 2018, seeking review of the Commissioner's[1] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on March 9, 2018, and March 10, 2018. Pursuant to the Court's Order,

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

the parties filed a Joint Submission (alternatively "JS") on December 27, 2018, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on September 13, 1962. [Administrative Record ("AR") at 27.] He is unable to perform any past relevant work. [AR at 27, 78.]

On January 15, 2014, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since May 1, 2009. [AR at 16.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 140.] A hearing was held on October 11, 2016, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 34-51.] In his November 14, 2016, decision, the ALJ noted that plaintiff had been found to be not disabled in a January 22, 2011, decision by another ALJ ("2011 Decision"), based on a prior application for a period of DIB filed on September 21, 2009. [AR at 16; see also AR at 85-93.] The ALJ noted that the current application alleged an onset of disability that was within the previously adjudicated period. [AR at 16.] He found that with respect to the previously adjudicated period, the prior decision was final and that the same parties, law, fact, and issues are involved in the current application. [Id.] He therefore dismissed plaintiff's request for hearing with respect to the previously adjudicated period, but noted that there still exists a period after the effective date of the 2011 Decision during which plaintiff continued to meet the required status requirements. [Id.] He then considered the period after January 23, 2011, the date of the 2011 Decision, and concluded that plaintiff was not under a disability from January 23, 2011, through November 14, 2016, the date of the current decision. [AR at 16-28.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 184-85.] When the Appeals Council denied plaintiff's request for review on January 24, 2018 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam)

1 (citations omitted). This action followed.

### III.
### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

### IV.
### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting

42 U.S.C. § 423(d)(1)(A)).

## A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a vocational expert ("VE"), or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966

F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that although there was some evidence that plaintiff had worked since January 23, 2011 -- the date of the previous decision finding that plaintiff was not disabled -- he had not engaged in substantial gainful activity since that date.[2]  [AR at 19.]  At step two, the ALJ concluded that plaintiff has the severe impairments of status-post head trauma; bipolar disorder; and depressive disorder.  [Id.]  He also found plaintiff's medically determinable impairments of hip pain and degenerative changes in the spine to be non-severe.  [AR at 20.]  He further noted that even if these impairments were severe, they caused "such minimal limitations as to still be performable under the jobs titles provided by the" VE.  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [AR at 20.]  Adopting the residual functional capacity ("RFC")[3] assessment set forth in the 2011 Decision, the ALJ further found that plaintiff retained the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: he "can perform simple, repetitive tasks that are not fast-paced, mentally or physically, or that require math or computers; and he cannot perform rapid assembly line work." [AR at 21.]  At step four, the ALJ concluded that plaintiff is unable to perform any of his past relevant work.  [AR at 27, 78.]  At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony from the prior hearing and 2011 Decision, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "floor waxer" (Dictionary of Occupational Titles ("DOT") No. 381.687-034), and as a "hand

---

[2]     The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.  [AR at 19.]

[3]     RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

packager" (DOT No. 920.587-018). [AR at 28, 79.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from January 23, 2011, the date of the last decision, through November 14, 2016, the date of the current decision. [AR at 28.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he failed to consider relevant and substantial evidence supporting plaintiff's claim of disability in his assessment of plaintiff's RFC. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A.    THE ALJ'S RFC DETERMINATION**

As discussed above, the ALJ found plaintiff's medically determinable impairments of low back and hip pain to be non-severe, in part because a July 2, 2012, neurological examination determined that plaintiff was "neurologically intact," with "no physical or neurological deficits," and the neurologist opined that plaintiff had no exertional limitations. [AR at 20 (citing AR at 401-03).] The ALJ also observed that an April 22, 2014, consultative orthopedic examination showed "no evidence of significant physical limitations, although there was evidence of some degenerative changes in the lumbar spine." [Id. (citing (AR at 472-80).] The ALJ stated that plaintiff received "minimal treatment for his alleged hip and low back pain throughout the record," and reported only taking over-the-counter extra strength Tylenol for pain. [Id.] Additionally, "no aggressive treatment was recommended or anticipated for these conditions." [Id.]

Plaintiff argues that the ALJ's decision is not supported by substantial evidence as the ALJ "failed to properly consider relevant and substantial evidence of record supporting Plaintiff's claim of disability in the ALJ's assessment of Plaintiff's [RFC]." [JS at 4.] He notes that "[i]nstead of properly considering the relevant medical evidence of record, as it existed at the time of this hearing in 2016, the ALJ chose[] to adopt the findings of a prior [ALJ] from a decision dated January 22, 2011, finding Plaintiff, a 54 year old, capable of sustaining medium work activity, specifically contemplating the ability to stand and walk the entire work day, and lift and/or carry

6

up to 50 pounds one-third of the work day." [Id.] Specifically, plaintiff argues that the ALJ failed to properly consider his "degenerative disc disease of the lumbar spine with moderate to severe neuroforaminal narrowing" as reflected on a March 26, 2015, MRI report. [JS at 5 (citing AR at 534).] Plaintiff contends that the MRI report "is clearly substantial evidence of a new and additional impairment arising subsequent to the prior ALJ denial in 2011." [Id. (citing AR at 471, 494, 538).] He further states that the conditions reflected in the MRI report are also documented in a January 8, 2014, x-ray of plaintiff's lumbar spine. [Id. (citing AR at 471).] He notes that the April 22, 2014, report of the orthopedic consultative examiner also reflected that plaintiff complained of back pain and had a decreased range of motion of his lumbar spine. [Id. (citing AR at 472, 474).]

Defendant responds that plaintiff's "allegation of error in regard to ALJ Schloss' [RFC] assessment ignores the basis for this finding -- the ALJ's legal duty to follow the previous ALJ's findings under Acquiescence Ruling . . . 97-4(9) and Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988)." [JS at 7.] Defendant also contends that for the time period after January 22, 2011, other than a change in age category as acknowledged by the ALJ [see AR at 17], plaintiff failed to prove "'changed circumstances' in order to rebut the Chavez presumption that he continued to be 'not disabled.'" [Id. (citing AR at 16).] Defendant argues that "[a]bsent a showing of 'changed circumstances' and evidence that Plaintiff's impairments were more limiting than in January 2011, ALJ Schloss reasonably adopted the previous ALJ's assessment that plaintiff was capable of only 'simple, repetitive tasks that are not fast-paced, mentally or physically, or require math or computers; and he cannot perform rapid assembly line work.'" [JS at 9 (citing AR at 21, 89).] Morever, defendant states that the evidence as a whole "does not indicate that [plaintiff] is incapable of medium work," "[a]ll of the examining medical source opinions indicated that Plaintiff did not have any significant physical limitations precluding 'medium work,'" and the medical source opinions, including Dr. Flanagan (consultative examining orthopedist) in May 2012 [AR at 382-87], Dr. Moore (consultative examining neurologist) in July 2012 [AR at 401-05], Dr. Schoene (consultative examining orthopedist) in April 2014 [AR at 472-80], the state agency reviewing doctors in June 2014, and the state agency reviewing doctors in September 2014, all supported

the ALJ's findings "and there were no treating source opinions to the contrary." [JS at 12-13 (citing AR at 102-07, 116-24, 427-76).] Defendant does not discuss plaintiff's contention that the ALJ should have considered the 2015 MRI report in making his RFC determination as that report reflected a changed condition.

**B.     ANALYSIS**

In his April 22, 2014, report, the consultative orthopedic examiner stated that he had reviewed a May 25, 2012, orthopedic evaluation in which plaintiff's "chief complaints were right hip pain, low back pain, and left shoulder pain," and the diagnoses were "lumbar myofascial sprain; lumbar degenerative joint disease; left shoulder muscular strain; and right hip contusion." [AR at 472 (citing AR at 385).] A review of the May 25, 2012, orthopedic evaluation reveals that x-rays of plaintiff's lumbar spine had been taken, which revealed "some straightening of the lumbar spine[,] . . . [and] [s]pondylosis . . . at the L5-S1 level with intervertebral disc space narrowing noted at L5-S1 level." [AR at 385.] The Court agrees with plaintiff that the 2012 x-ray supports plaintiff's position that the 2015 MRI depicting "degenerative disc disease of the lumbar spine with moderate to severe neuroforaminal narrowing" was indicative of a material change in his condition. In fact, at the hearing, counsel specifically stated that he was relying on this MRI report "to show material change." [AR at 44.] In his decision, however, the ALJ never even mentioned the 2015 MRI results, which arguably support plaintiff's alleged limitations as a result of his back pain, and appear to show that plaintiff's condition had changed in severity from the May 25, 2012, x-ray, and even from the time of the latest consultative examination in 2014.

While an ALJ is not required to address all evidence presented to him, he must explain why significant and probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted). "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that . . . [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings. See, e.g., Holohan v.

8

Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

      In this case, in addition to plaintiff's complaints of back pain and resulting limitations (e.g., he alleged "difficulties with standing, squatting, kneeling, and walking further than 2 miles at a time" [AR at 21]), the 2012 x-ray; the May 2012 orthopedic consultative examiner's findings of "pain with axial rotation of the trunk," flexion and extension of the back "limited secondary to pain," and "tenderness to palpation of the lumbar paraspinal muscles as well as spinous processes"; the April 2014 consultative examiner's finding of a decreased range of motion in plaintiff's lumbar spine; and the 2015 MRI showing degenerative disc disease of the lumbar spine with moderate-to-severe neuroforaminal narrowing, all seem to reflect that plaintiff's back condition has changed for the worse over time. In any event, none of the consultative or reviewing examiners as discussed above and to whom the ALJ apparently gave great weight with respect to his finding that plaintiff's back impairment was non-severe, had the benefit of that 2015 MRI in forming their opinions that plaintiff was capable of at least medium exertional level work, and the ALJ did not provide an explanation for not mentioning this seemingly probative and significant diagnostic

report.

Because the ALJ did not provide any rationale for rejecting what would appear to be significant and probative evidence of changes in plaintiff's physical condition and resulting limitations, remand is warranted on this issue.

## **VI.**

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, if the ALJ determines it is warranted, the ALJ shall order a consultative physical examination or examinations, with the appropriate specialist(s) being provided with all of plaintiff's medical records, including the 2015 MRI report. Second, the ALJ on remand shall reassess the entire medical record (including, but not limited to, the 2015 MRI report) relating to plaintiff's physical impairments, to determine whether plaintiff has shown a changed physical condition since the time of the 2011 Decision sufficient to overcome the Chavez presumption. Finally, based on his reevaluation of the medical record, and his consideration of plaintiff's physical impairments if any, on his limitations, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant

numbers in the national economy that plaintiff can still perform.[4]  See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  January 9, 2019

*Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[4]  Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to perform his past relevant work.  [AR at 27.]

11